IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| FRANK EFFORD, | ) | CASE NO. 1:25-CV-01303-JRA |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE JOHN R. ADAMS |
| vs. | ) | UNITED STATES DISTRICT JUDGE |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | MAGISTRATE JUDGE |
| SECURITY, | ) | JONATHAN D. GREENBERG |
| | ) | |
| Defendant. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| | ) | |

Plaintiff, Frank Efford ("Plaintiff" or "Efford"), challenges the final decision of Defendant, Frank J. Bisignano,[1] Commissioner of Social Security ("Commissioner"), denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act").  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.  For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

## I. PROCEDURAL HISTORY

In June 2023, Efford filed an application for SSI, alleging a disability onset date of December 31, 2022 and claiming he was disabled due to hypertension, "spine disease", sarcoidosis, and high cholesterol. (Transcript ("Tr.") 81, 83.)  The applications were denied initially and upon reconsideration, and Efford requested a hearing before an administrative law judge ("ALJ").  (*Id*. at 101, 105, 109, 110.)

---

[1] On May 7, 2025, Frank J. Bisignano became the Commissioner of Social Security.

1

On May 16, 2024, an ALJ held a hearing, during which Efford, represented by counsel, and an impartial vocational expert ("VE") testified.  (*Id*. at 33-65.)  On May 31, 2024, the ALJ issued a written decision finding Efford was not disabled.  (*Id*. at 17-32.)  The ALJ's decision became final on May 6, 2025, when the Appeals Council declined further review.  (*Id*. at 1.)

On June 24, 2025, Efford filed his Complaint to challenge the Commissioner's final decision.  (Doc. No. 1.)  The parties have completed briefing in this case.  (Doc. Nos. 6, 8.) Efford asserts the following assignments of error:

1. The ALJ erred when he failed to support his conclusions or discuss supportability and consistency when he evaluated the opinion of the reviewing source.

2. The ALJ erred when he failed to properly apply the criteria of Social Security Ruling 96-8p and consider all Plaintiff's impairments and related limitations when forming the residual functional capacity evaluation.

3. At Steps Four and Five of the Sequential Evaluation, the ALJ's finding that Plaintiff could perform work at the medium level of exertion and/or his past work as a taxi driver or dump truck driver was not supported by substantial evidence.

(Doc. No. 6 at 1.)

## II. EVIDENCE

### A.    Personal and Vocational Evidence

Efford was born in 1965 and was 58 years-old at the time of his administrative hearing (Tr. 39, 81), making him a "person of advanced age," under Social Security regulations.  *See* 20 C.F.R. §§ 404.1563(e), 416.963(e).  He has an eleventh-grade education.  (Tr. 40, 81.)  He has past relevant work as a taxi driver and dump truck driver.  (*Id*. at 25.)

2

**B.**      **Relevant Medical Evidence[2]**

On October 13, 2022, Efford presented for a complete exam. (*Id*. at 278.) He complained of low pack paid occurring for many years. (*Id*.) Physical examination revealed normal range of motion, no tenderness, and supple neck. (*Id*. at 281.)

On May 2, 2023, Efford presented for a follow up visit via telephone. (*Id*. at 273.) He complained of chronic back pain occurring for many years that worsened over the last few weeks and months. (*Id*.) He reported difficulty walking, a heavy feeling in his legs, difficulty getting out of bed, and denied numbness and tingling. (*Id*.) An X-ray from March 22, 2023 revealed flattening lumbar lordosis, L5-S1 degenerative disc disease, mild to moderate L3-S1 endplate spondylosis, and mild lower lumbar hypertrophic degenerative facet arthrosis. (*Id*.) Diagnoses included lumbar radiculopathy, and chronic midline low back pain with sciatica. (*Id*. at 275.) He was prescribed Gabapentin. (*Id*. at 276.)

On July 11, 2023, Efford presented for a partial exam. (*Id*. at 302.) Physical examination revealed lower lumbar spine tenderness, normal range of motion, and supple neck. (*Id*. at 305.)

An August 4, 2023 X-ray of his hip revealed no fracture or dislocation, maintained joint spaces, and multilevel lumbar degenerative changes at L5-S1. (*Id*. at 326.)

On August 21, 2023, Efford completed Function Report – Adult. (*Id*. at 234.) He reported not being able to stand for any period of time. (*Id*.) He stated he uses a wheelchair to get around downstairs and move about his yard. (*Id*.) He used to drive for Lyft but now he hurts all the time, even when sitting. (*Id*.)

On October 17, 2023, Efford presented for a follow up visit due to chronic low back pain and left sided sciatica. (*Id*. at 315.) An MRI was ordered but it was not covered by insurance. (*Id*. at 316.) No recent physical therapy was done and Efford was referred to the spine clinic, but no appointment was made. (*Id*.)

---

[2] The Court's recitation of the medical evidence is not intended to be exhaustive and is limited to the evidence cited in the parties' Briefs.

3

An X-ray revealed multilevel lumbar degenerative changes, that was described as similar to a prior X-ray. (*Id*.) Physical examination revealed no tenderness and normal range of motion. (*Id*. at 319.) Diagnoses at this time include hyperlipidemia, hypertension, degenerative disc disease, lumbar radiculopathy, and chronic low back pain with left-sided sciatica. (*Id*. at 320.)

**C.    State Agency Reports**

**1.    Physical Impairments**

On July 31, 2023, Cecily P. Turner reviewed the claim file and opined Efford could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds, stand or walk about six hours in an eight hour work day, sit for about six hours in an eight hour work day, frequently climb ramps or stairs, occasionally climb ladders, ropes and scaffolds, unlimited balancing, and frequently stoop, kneel, crouch, and crawl. (*Id*. at 86.) Dr. Turner found Efford had no manipulative, visual, communicative, or environmental limitations. (*Id*.)

On December 2, 2023, on reconsideration, Steve McKee, M.D., opined there was insufficient evidence to make a residual functional capacity determination. (*Id*. at 92-93.)

**D.    Hearing Testimony**

During the May 16, 2024 hearing, Efford testified to the following:

- He has a driver's license but does not have a car. (*Id*. at 40.) He stopped driving in 2023 after the engine went bad in his car. (*Id*.) He has an eleventh-grade education. (*Id*.) He is not currently working. (*Id*.) He drove for Lyft in 2023. (*Id*. at 41.) He earned about $21,000 driving for Lyft in 2022. (*Id*. at 41-42.) He rented a car through Lyft and is unsure if the $21,000 is what he earned after the expense of renting the car. (*Id*. at 42.) He thinks it cost $300 per week to rent the car. (*Id*. at 42-43.) After the expense of renting the car, he thinks he made about $4,400. (*Id*. at 43.) He did not lift or carry anything when he worked for Lyft. (*Id*.) He did not yet file tax returns for his 2022 earnings from Lyft. (*Id*. at 46.) He stopped working for Lyft due to back pain. (*Id*. at 54.)

- In 2019 he had earnings from driving a small dump truck. (*Id*. at 43-44.) It was not full-time work; just when they needed him. (*Id*. at 44.) He previously worked as a welder. (*Id*. at 45.) The last time he worked as a welder was 2008 or 2009. (*Id*.)

4

- He filed for disability because he can't walk and get around. (*Id*. at 46.) His back and legs hurt a lot. (*Id*.) His back pain moves down his left leg to his feet. (*Id*. at 55.) About three to four days per week he cannot get out of bed. (*Id*. at 46, 52.) Some days he crawls to the bathroom. (*Id*. at 47.) He uses a "pot chair" next to his bed. (*Id*.) In terms of walking distance, he cannot even walk down the block. (*Id*. at 52.) He does not have difficulty standing. (*Id*. at 53.) He can sit for about 45 minutes to an hour before his back starts to get stiff. (*Id*. at 53.) To treat his condition, he takes medication and uses a cane. (*Id*. at 47.) He takes medication as prescribed, and it helps a little bit. (*Id*. at 51.)  He uses a cane and wheelchair every day. (*Id*. at 53.) He uses the cane to get around upstairs and he keeps the wheelchair at the bottom of his stairs to sit in when he gets downstairs. (*Id*. at 53-54) He was prescribed physical therapy but has not yet gone. (*Id*. at 47.) He plans to try physical therapy. (*Id*. at 48.) He was referred to a spine specialist but has not yet seen anyone. (*Id*.) He made appointments for physical therapy and the spine specialist, but they set the dates out very far, which is why he has not seen a physical therapist or the spine specialist. (*Id*. at 49-50.)

- On a typical day, he watches TV and eats. (*Id*. at 50.) He doesn't go outside. (*Id*.) He waits for someone else to cut his lawn. (*Id*.) He prepares food with his sister. (*Id*.) His girlfriend comes over and helps him a lot. (*Id*.) His girlfriend grocery shops for him. (*Id*. at 51.) Sometimes he goes shopping using a scooter, but not often. (*Id*.) He does not engage in hobbies, volunteer work, laundry, or household chores. (*Id*.)

The VE testified Efford had past work as a taxi driver and dump truck driver.  (*Id*. at 56-59.)  The ALJ then posed the following hypothetical question:

> So, Ms. Kendrick, assume a hypothetical individual of the claimant's age, and education, and with the past work that you described. Further, assume this person is limited as follows. This is a medium exertional hypothetical, but with the following additional limitations. This person can only occasionally climb ramps and stairs and never climb ladders, ropes, or scaffolds, can frequently stoop, kneel, crouch, and crawl, and this person can never work at unprotected heights. Can this hypothetical individual perform the past work that Mr. Efford performed?

(*Id*. at 59.)

The VE testified the hypothetical individual would be able to perform Efford's past work as both a taxi driver and dump truck driver as generally performed by the DOT and as actually performed by Efford. (*Id*.)  The VE further testified the hypothetical individual would also be able to perform other representative jobs in the economy, such as linen supply room worker, kitchen helper, and hand packager.  (*Id*.)

The ALJ asked:

5

> For the next hypothetical, Ms. Kendrick, if I were to, this time, limit the individual to light work, but with the following additional limitations. This time the person can only occasionally stoop, kneel, crouch, and crawl. Can this hypothetical individual perform any of the past jobs that Mr. Efford performed?

(*Id*. at 60.) The VE responded that past work could be performed as both the taxi driver and dump truck driver as actually performed by Efford, but not as generally performed by the DOT. (*Id*.) The VE explained Efford has no transferrable skills as a taxi driver that would transfer to light work. (*Id*.)

Efford's attorney asked, "isn't it true that driving jobs by their definition are at least light because of needing to use your lower extremities to push and pull?" (*Id*. at 61.) The VE explained that driving jobs often classified as medium exertion because they may require a pre-trip inspection, including lifting under the hood, etc. (*Id*.) After questioning by counsel, the VE explained that she classified Efford's past jobs as medium as performed by the DOT, and sedentary as performed by Efford. (*Id*. at 62-63.) Counsel asked, "So if I would say that the person was limited to no more than occasional use of their bilateral lower extremities to operate foot controls, could he still perform his past relevant work?" (*Id*. at 64.) The VE responded, "No." (*Id*.) Counsel asked, "If the person was limited to no more than occasional use of the bilateral lower extremities because it radiates radiculopathy and pain, again, for the occasional, could such a person perform any of the medium, unskilled jobs you cited?" (*Id*.) The VE again responded, "No." (*Id*.)

### III. STANDARD FOR DISABILITY

A disabled claimant may also be entitled to receive SSI benefits.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs*., 667 F.2d 524 (6th Cir. 1981).  To receive SSI benefits, a claimant must meet certain income and resource limitations.  20 C.F.R. §§ 416.1100, 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4)*,* 416.920(a)(4).  *See also Ealy v. Comm'r of Soc. Sec*., 594 F.3d 504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must

6

demonstrate that they are not currently engaged in "substantial gainful activity" at the time of the disability application.  20 C.F.R. §§ 404.1520(b), 416.920(b).  Second, the claimant must show that they suffer from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c), 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education, or work experience. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).   Fourth, if the claimant's impairment or combination of impairments does not prevent the claimant from doing their past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent the claimant from doing their past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.920(g).

## IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since June 5, 2023, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairment: spinal *stenosis* of the lumbar spine (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently stoop, kneel, crouch, and crawl; and never work at unprotected heights.

5.      The claimant is capable of performing past relevant work as a taxi driver (DOT 913.463-018; SVP 3 (semi-skilled); medium as generally performed; sedentary as actually performed); and dump truck driver (DOT 902.683-010; SVP 2 (unskilled); medium as generally performed; sedentary as actually performed). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

6.      The claimant has not been under a disability, as defined in the Social Security Act, since June 5, 2023, the date the application was filed (20 CFR 416.920(f)).

(Tr. 19-27.)

## V.  STANDARD OF REVIEW

The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence

could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.").  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.  *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-1300, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-cv-734, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, No. 2:10-CV-017, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-cv-1982, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI.  ANALYSIS

### A.    Opinion Evidence

In his first assignment of error, Efford argues the ALJ erred by failing to discuss the supportability and consistency factors when he evaluated the opinion of Dr. Turner. (Doc. No. 6 at 6-9.) Efford claims the

ALJ erred by finding Dr. Turner's limitation to light level of exertion partially persuasive because it was not consistent with the medical record. (*Id*. at 7.) Efford contends when an RFC conflicts with an opinion from a medical source the ALJ must explain why the opinion was not adopted and that was not done here. (*Id*. at 8.) Efford argues the ALJ did not address the supportability and consistency factors. (*Id*. at 8.)

In response, the Commissioner argues the ALJ found Dr. Turner's prior administrative medical findings partially persuasive, explaining that the limitation to light work was not supported by or consistent with the record. (Doc. No. 8 at 6.) The Commissioner points out the ALJ found additional nonexertional limitations than those found by Dr. Turner. (*Id*.) The Commissioner contends the ALJ acknowledged Efford's degenerative changes of the spine, and also noted the relatively unremarkable medical evidence, which supported the ALJ's findings. (*Id*.) The Commissioner asserts the ALJ addressed consistency and supportability in the paragraph analyzing Dr. Turner's opinion and in the decision as a whole. (*Id*. at 7.)

Since Efford's claim was filed after March 27, 2017, the Social Security Administration's new regulations ("Revised Regulations") for evaluation of medical opinion evidence apply to this claim. *See Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.

Under the Revised Regulations, the Commissioner will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings, including those from your medical sources."  20 C.F.R. § 404.1520c(a).  Rather, the Commissioner shall "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings using the

factors set forth in the regulations: (1) supportability;[3] (2) consistency;[4] (3) relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors, including but not limited to evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of the agency's disability program's policies and evidentiary requirements.  20 C.F.R. § 404.1520c(a), (c)(1)-(5).  However, supportability and consistency are the most important factors.  20 C.F.R. § 404.1520c(b)(2).

The Revised Regulations also changed the articulation required by ALJs in their consideration of medical opinions.  The new articulation requirements are as follows:

> (1) Source-level articulation. Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.

> (2) Most important factors. The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior

---

[3] The Revised Regulations explain the "supportability" factor as follows: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).

[4] The Revised Regulations explain the "consistency" factor as follows: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

(3) Equally persuasive medical opinions or prior administrative medical findings about the same issue. When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same, we will articulate how we considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those medical opinions or prior administrative medical findings in your determination or decision.

20 C.F.R. § 404.1520c(b)(1)-(3).

"Although the regulations eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [he/she] considered the medical opinions' and 'how persuasive [he/she] find[s] all of the medical opinions.'" *Ryan L.F. v. Comm'r of Soc. Sec.,* No. 6:18-cv-01958-BR, 2019 WL 6468560, at *4 (D. Ore. Dec. 2, 2019) (quoting 20 C.F.R. § 416.920c(a), (b)(1)).  A reviewing court "evaluates whether the ALJ properly considered the factors as set forth in the regulations to determine the persuasiveness of a medical opinion." *Id.*

The ALJ analyzed the state agency opinion of Dr. Turner as follows:

As for the opinion evidence, the opinion of the state agency medical consultant at the initial level, Cecily P. Turner, dated July 31, 2023, is partially persuasive. She reviewed the claim and opined that the claimant is limited to light exertion, except frequently climb ramps and stairs; occasionally climb ladders, ropes, and scaffolds; and frequently stoop, kneel, crouch, and crawl (B3A/5). As to finding that the claimant can frequently stoop, kneel, crouch, and crawl, I find this portion of the opinion persuasive because it is supported by, and consistent with, the more complete medical record. However, as to limiting the claimant to light exertion, except frequently climb ramps and stairs and occasionally climb ladders, ropes, and scaffolds, I find these portions of the opinion not persuasive because they are not supported by, or consistent with, the more complete medical record. While the medical record does reflect degenerative changes in the claimant's spine (B1F/8; B3F/14) and the claimant had spinal tenderness on one occasion (B2F/9), the extent of limitations imposed by this opinion are not consistent with the record. The

12

record contains generally unremarkable physical examination findings, as noted above (B1F/15, 16; B2F/9; B3F/7). Moreover, the more complete record is consistent with further postural limitations than in this opinion. For these reasons and based on this evidence, I find this opinion only partially persuasive.

(Tr. 24.)

Supportability and consistency are the most important factors under the new regulations for evaluating medical source opinions. 20 C.F.R. § 404.1520c(a). The ALJ considered the supportability and consistency of Dr. Turner's opinion, discussing Efford's degenerative changes in his spine and experiencing spinal tenderness on one occasion. (Tr. 24.) The ALJ noted the limitations imposed by Dr. Turner "are not consistent with the record" and cited generally unremarkable physical examination findings. (*Id*., citing Tr. 281, 282, 305, 319.) The ALJ further found "the more complete record is consistent with further postural limitations than in this opinion." (*Id*.)

Efford contends the ALJ did not properly explain why he did not adopt Dr. Turner's opinion. (Doc. No. 6 at 8.) Here, the ALJ plainly explained Dr. Turner's limitations were not consistent with the record which was generally unremarkable. (Tr. 24.) The ALJ also found further postural limitations were appropriate. (*Id*.)

Here, the ALJ considered both the supportability and consistency of Dr. Turner's opinion. It is the ALJ's job to weigh evidence and resolve conflicts, and he did so here. While Efford would weigh the evidence differently, it is not for the Court to do so on appeal.

There is no error.

**B.    Assistive Devices**

In his second assignment of error, Efford argues the ALJ failed to include limitations related to Efford's need to use a cane and/or wheelchair. (Doc. No. 6 at 11.) Efford argues the ALJ acknowledged he has diagnoses of sarcoidosis, obesity, and hypertension, but failed to consider these impairments and their

13

related limitations when forming the RFC. (*Id*.) Efford claims the ALJ "did not build an accurate and logical bridge" between the evidence and the ALJ's decision to deny benefits. (*Id*.)

In response, the Commissioner states that while Efford reported the use of a cane and wheelchair, the record did not support the use of a cane or wheelchair. (Doc. No. 8 at 8.) The Commissioner argues the ALJ does not have to accept Efford's statements at face value. (*Id*.)

The RFC determination sets out an individual's work-related abilities despite his or her limitations. *See* 20 C.F.R. § 404.1545(a)(1). A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(2). An ALJ "will not give any special significance to the source of an opinion on issues reserved to the Commissioner." *See* 20 C.F.R. § 404.1527(d)(3). As such, the ALJ bears the responsibility for assessing a claimant's RFC based on all the relevant evidence (20 C.F.R. § 404.1546(c)) and must consider all of a claimant's medically determinable impairments, both individually and in combination. *See* SSR 96–8p, 1996 WL 374184 (SSA July 2, 1996).

"In rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis." *Fleischer*, 774 F. Supp. 2d at 880 (citing *Bryan v. Comm'r of Soc. Sec.*, 383 F. App'x 140, 148 (3d Cir. 2010) ("The ALJ has an obligation to 'consider all evidence before him' when he 'mak[es] a residual functional capacity determination,' and must also 'mention or refute [...] contradictory, objective medical evidence' presented to him.")). *See also* SSR 96-8p, 1996 WL 374184, at *7 (SSA July 2, 1996) ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.")). While the RFC is for the ALJ to determine, the claimant bears the burden of establishing the impairments that determine her RFC. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).

14

It is well-established there is no requirement that the ALJ discuss each piece of evidence or limitation considered. *See, e.g., Conner v. Comm'r*, 658 F. App'x 248, 254 (6th Cir. 2016) (citing *Thacker v. Comm'r*, 99 F. App'x 661, 665 (6th Cir. May 21, 2004) (finding an ALJ need not discuss every piece of evidence in the record); *Arthur v. Colvin*, No. 3:16CV765, 2017 WL 784563, at *14 (N.D. Ohio Feb. 28, 2017) (*accord*). However, courts have not hesitated to remand where an ALJ selectively includes only those portions of the medical evidence that places a claimant in a capable light and fails to acknowledge evidence that potentially supports a finding of disability. *See e.g., Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 724 (6th Cir. 2014) (reversing where the ALJ "cherry-picked select portions of the record" rather than doing a proper analysis); *Germany–Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (finding error where the ALJ was "selective in parsing the various medical reports"). *See also Ackles v. Colvin*, No. 3:14cv00249, 2015 WL 1757474, at *6 (S.D. Ohio April 17, 2015) ("The ALJ did not mention this objective evidence and erred by selectively including only the portions of the medical evidence that placed Plaintiff in a capable light."); *Smith v. Comm'r of Soc. Sec.*, No. 1:11-CV-2313, 2013 WL 943874, at *6 (N.D. Ohio March 11, 2013) ("It is generally recognized that an ALJ 'may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding.'"); *Johnson v. Comm'r of Soc. Sec.*, No. 2:16-cv-172, 2016 WL 7208783, at *4 (S.D. Ohio Dec. 13, 2016) ("This Court has not hesitated to remand cases where the ALJ engaged in a very selective review of the record and significantly mischaracterized the treatment notes.").

Here, the ALJ considered Efford's use of a cane and wheelchair in the RFC, writing, "The claimant also indicated that he relies on a wheelchair (B10E/3). He also testified that he relies on a cane (Hearing Testimony)." (Tr. 22.) The ALJ analyzed Efford's use of an assistive device as follows:

> While the claimant reported use of a wheelchair (B10E/3), the medical evidence of record does not support that the use of a cane has been medically necessary. The current medical record does not support that he has been observed using a wheelchair as his gait was not noted to be remarkable or

15

assisted, and the record does not contain a prescription for it. Moreover, the examination findings of record do not support the loss of strength, range of motion, strength, reflexes, or sensation, to support that cane is medically necessary. Aside from one finding of tenderness in the lower lumbar spine (B2F/9), the claimant's physical examinations were generally unremarkable (B1F/16; B2F/9; B3F/7) throughout the record. For example, he had no spinal tenderness and normal range of motion on examination (B1F/15; B3F/7).

(*Id*. at 23.) Here, the ALJ properly weighed Efford's assertion regarding use of an assistive device and the medical record when forming the RFC. *See Jones v. Comm'r of Soc. Sec*., 336 F.3d 469, 475-76 (6th Cir. 2003) ("an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability."). In the Sixth Circuit an ALJ's decision "cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." (Id. at 477.) Substantial evidence supports the ALJ's conclusion.

There is no error.

### C.     Past Work

In his third assignment of error, Efford argues the ALJ erred at Steps Four and Five of the sequential evaluation when he found Efford could perform his past work. (Doc. No. 6 at 12-15.) Efford contends the ALJ erred when he found he could perform his past work. (Id. at 12.) Efford claims the ALJ erred at Step Five when he found Efford could perform work at the medium level of exertion because it requires someone to stand or walk about six hours in an eight-hour workday, which Efford could not do given his low back pain. (*Id*. at 13.) Efford argues the ALJ's determination that he could perform work at the medium level of exertion is not supported by substantial evidence. (*Id*. at 14.) Efford claims he did not perform work as a dump truck driver within the past five years, and the look back period for past relevant work is five years. (*Id*.) Efford contends that after expenses, he only earned $4,400 annually driving for Lyft, which does not rise to the level of substantial gainful activity and therefore cannot be considered past work. (*Id*.)

16

In response, the Commissioner argues the ALJ issued his decision on April 4, 2024, and under the rules in place at that time, a claimant's past work qualified as past relevant work if, among other things, it was performed within the last 15 years. (Doc. No. 8 at 9, citing C.F.R. § 416.965(a).) The Commissioner states the rule Efford seeks to apply here took effect in June 2024. (*Id*.) The Commissioner asserts the new rules are inconsequential to Efford's claim because his past work as a dump truck driver was performed less than five years before the Commissioner's final decision. (*Id*. at 10.) The Commissioner states Efford's calculation of the look back window from the date Appeals Council declined review is incorrect; the ALJ's decision from May 2024 is the final decision of the Commissioner. (*Id*.) The Commissioner argues Efford's contention that he had no past relevant work likewise fails due to this analysis. (*Id*. at 11.)

This Court recently addressed the same argument Efford raises, writing, in part:

> SSR 24-2p, adopted in June 2024, revises the Social Security Administration's definition of "past relevant work" to include only "work done within the past 5 years." SSR 24-2p; *How We Evaluate Past Relevant Work*, 89 F. Reg. 48479, 48480 (June 6, 2024) . . . I note, however, that SSR 24-2p only applies to new applications filed on or after June 22, 2024, and to any claims pending on or after June 22, 2024. *See* 89 F. Reg. 48479, n. 1.

*Shirey v. Bisignano*, No. 5:25-CV-01016-BMB, 2026 WL 691645, at *10 (N.D. Ohio Mar. 12, 2026), *report and recommendation adopted sub nom. Shirey v. Comm'r of Soc. Sec. Admin.*, No. 5:25-CV-01016, 2026 WL 912378 (N.D. Ohio Apr. 2, 2026). Since Efford's claims were not pending on June 22, 2024, the terms of SSR 24-2p do not apply here, and this argument fails.

Efford argues that because the Appeals Counsel did not make a determination in this case until May 6, 2025, the case was "pending" before the Social Security Administration on June 22, 2024. (Doc. No. 6 at 14.) As in *Shirey*, Efford cites no legal authority to suggest that a case still awaiting Appeals Council review would meet the definition of "pending." In *Beal v. Comm'r of Soc. Sec.,* No. 4:25-CV-00647, 2026 WL 318985 (N.D. Ohio February 6, 2026), a similarly situated plaintiff received an unfavorable ALJ decision

17

on March 6, 2024, and Appeals Council declined review on February 4, 2025. (*Id*.) The Beal Court found the claim was adjudicated on March 6, 2024, so the claim was not still pending on June 22, 2024, and thus, the terms of SSR 24-2p did not apply. (*Id.* at \*14.) Here, as in *Beal*, Efford offers no legal authority suggesting that his case was still pending at the time Appeals Council declined review. Because Efford's claim was not pending on June 22, 2024, SSR 24-2p does not apply.  The look back period to determine past relevant work encompasses Efford's work as a dump truck driver.

Efford disputes that his Lyft driving counts as past relevant work due to whether it rises to the level of substantial gainful activity. (Doc. No. 6 at 14.) Efford testified he had to pay to rent the car in order to drive for Lyft and thought it might have cost $300 per week. (Tr. 42.) Efford testified he did not have paperwork to prove how much he earned from Lyft and how much he paid for the car. (*Id*. at 43.) The record evidence suggests Efford earned $21,000 from January 2022 to December 2022. (*Id*. at 201.) It is the ALJ's job to weight the evidence and resolve conflicts, and he did so here. While Efford would weight the evidence differently, it is not for the Court to do so on appeal.

Efford argues the ALJ erred finding he could perform work at the medium level of exertion. (Doc. No. 6 at 14.) The ALJ considered Efford's symptoms, his allegations concerning pain while standing and difficulty sitting, his purported reliance on assistive devices, and activities of daily living. (Tr. 21-22.) The ALJ considered medical evidence, including unremarkable physical examinations exhibiting normal range of motion and lack of spinal tenderness, and opinion evidence.  (*Id*. at 23-25.) Ultimately, the ALJ summarized his RFC finding, writing:

> In construing the evidence in the claimant's favor, while also exercising an abundance of caution, I find that the claimant retains the physical abilities as set forth in the above residual functional capacity assessment. The pain, fatigue, effects of treatment, and residual functioning related to the claimant's musculoskeletal impairments support limiting the claimant to no more than medium exertion, with additional limitations on climbing, postural activities, environmental factors, and exposure to hazards, as noted above.

> This residual functional capacity finding is supported by, and consistent with, the evidence of record, including the medical evidence, examination findings, the persuasive portions of the medical opinions of record, and the claimant's allegations consistent with the medical evidence. This finding reasonably accommodates the physical limitations the claimant experiences from impairments.

(*Id*. at 24.)

While Efford interprets the records differently, the findings of the ALJ "are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton*, 246 F.3d at 772-73 (6th Cir. 2001). In the Sixth Circuit an ALJ's decision "cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones*, 336 F.3d at 477. Here, the ALJ properly weighed the evidence. Again, while Efford would weigh the evidence differently, it is not for the Court to do so on appeal.

There is no error.

## VII. CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

Date: May 22, 2026

*s/ Jonathan Greenberg*
Jonathan D. Greenberg
United States Magistrate Judge

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**